UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RODRIGUE ABELLARD, JR., | * |
| Plaintiff, | * |
| v. | * Civil Action 25-cv-11682-IT |
| COMMONWEALTH OF MASSACHUSETTS, et al., | * |
| Defendants. | * |

MEMORANDUM AND ORDER

October 20, 2025

TALWANI, D.J.

Plaintiff Rodrigue Abellard, Jr., proceeding *pro se*, has filed a Complaint [Doc. No. 1], Motion to Amend [Doc. No. 2], and Motion for Leave to Proceed *in Forma Pauperis* [Doc. No. 3]. For the reasons set forth below, the court will GRANT the motion for leave to proceed *in forma pauperis*, GRANT the motion to amend, and order Plaintiff to file a second amended complaint if he wishes to proceed with this action.

I. **Motion for Leave to Proceed *in Forma Pauperis***

Upon review Plaintiff's motion for leave to proceed *in forma pauperis* [Doc. No. 3], the court concludes that Plaintiff has adequately demonstrated that he is without income or assets to pay the $405 filing fee. Accordingly, the court GRANTS the motion.

II. **Motion to Amend**

Under the Federal Rules of Civil Procedure, at this stage of the litigation Plaintiff may amend his complaint once without the court's permission. See Fed. R. Civ. P. 15(a)(1). Accordingly, the court GRANTS the motion to amend [Doc. No. 2] before considering the

sufficiency of the pleading. The clerk shall docket the proposed amended complaint [Doc. No. 2-5] as the amended complaint.

### III. Review of the Amended Complaint

Because Plaintiff is proceeding *in forma pauperis*, the court may conduct a preliminary review of his amended complaint and dismiss any claim that fails to state a claim upon which relief may be granted. See 28 U.S.C. § 1915(e)(2)(B)(ii). The court may also consider jurisdictional matters *sua sponte*. See Riley v. Bondi, 606 U.S. —, 145 S.Ct. 2190, 2201 (2025) ("A federal court must always satisfy itself that it has jurisdiction."). In conducting this review, the court construes Plaintiff's pleading liberally because he is proceeding *pro se*. See Haines v. Kerner, 404 U.S. 519, 520-21 (1972).

#### A. Factual Background as Alleged in the Amended Complaint

Between approximately 2006-2009, Plaintiff was incarcerated due to forensic evidence tied to state chemist Annie Dookhan. Amend. Compl. at 6 ¶ 1.[1] In 2008, a representative of the Commonwealth's Department of Children and Families ("DCF") and a court-appointed attorney for one of Plaintiff's minor children [who the court identifies by his initials, K.A.] visited Plaintiff in prisoner, at which time Plaintiff "reaffirmed [his] desire to remain a custodial parent." Id. ¶ 3. DCF and K.A.'s attorney concluded that K.A.'s mother was unfit to parent, and "[w]ith court approval," the agency subsequently authorized Plaintiff's sister "to assume temporary physical custody and guardianship." Id. ¶ 4.

The Commonwealth's Department of Revenue – Child Support Division ("DOR-CSE"), "in concert with the Massachusetts Probate and Family Court, later misclassified [Plaintiff] as a

---

[1] All citations to paragraphs of the amended complaint refer to the third set of numbered paragraphs (numbered 1-174), beginning on page 6 and ending on page 28 of the amended complaint.

2

'non-custodial parent.'" Id. ¶ 6. In late 2008, while Plaintiff was still incarcerated, "a default child support order was issued against [Plaintiff], even though Plaintiff had "received no notice, no opportunity to appear, no hearing, and the order itself bore no judicial signature." Id. ¶ 7. Plaintiff "was never provided a copy of that 2008 order" nor "offered a post-deprivation hearing to challenge it." Id. ¶ 8. "At no point did DOR-CSE or the Probate Court investigate [Plaintiff]'s incarceration status, [his] custodial role, or [his] financial capacity before enforcing this judgment[.]" Id.

The Amended Complaint is silent on the events immediately thereafter, but it appears that the Plaintiff's children were in Plaintiff's care at some point following his incarceration. See id. ¶ 13. In June 2016, DCF "removed [K.A.] and his siblings from Plaintiff's care without a court order, warrant, or showing of probable cause[,]" despite DCF's internal safety assessments confirming the absence of any risk or abuse. Id. ¶ 13. K.A. was placed "in an unlicensed and medically untrained setting[.]" Id.

In 2017, DCF approved K.A.'s "reunification with his biological mother[,]" despite Plaintiff's objections, the absence of a parental fitness hearing or an updated medical evaluation, and without review of a treating pulmonologist's report. Id. ¶ 14.

K.A. "never received the sleep study that had been order and never received necessary follow-up care." Id. ¶ 15. On August 12, 2019, K.A. died in his sleep. Id. The Medical Examiner's report confirmed the cause of death as "untreated obstructive sleep apnea[.]" Id.

In 2022, Plaintiff appeared in the Middlesex Probate and Family Court and "presented extensive evidence of [his] wrongful incarceration, [his] co-custodial status, and a notarized agreement signed by the custodial parent . . . supporting the termination of the 2008 order." Id. ¶ 9. Judge Thomas Barbar "dismissed [Plaintiff's] motion with prejudice." Id. "Since that

3

dismissal, DOR-CSE and Probate Court officials have enforced this . . . [child support] order through automated wage garnishments, bank levies, tax refund interceptions, license suspensions, and adverse credit reporting." Id. ¶ 10. "None of these actions involved judicial hearings or afforded [Plaintiff] any opportunity to contest the enforcement." Id.

### B        Claims for Relief

Plaintiff brings nineteen claims against eleven identified state officials. Id. at 5-6 and ¶¶ 32-76, which include claims for violations of his federal constitutional rights (equal protection, due process, access to the courts), civil conspiracy, fraud, negligence, and intentional infliction of emotional distress. Plaintiff also brings claims against unidentified employees or contractors of the DOR-CSE, third-party contractors or vendors involved enforcement of child support orders, and officials of the probate and family courts. Id. ¶¶ 90-114.

In his prayer for relief, Plaintiff seeks declaratory relief, injunctive relief, damages, attorney's fees, and "Equitable and Remedial Relief." Id. at 28-29. Plaintiff asks, *inter alia*, that the court declare that "the 2008 child support order issued against Plaintiff during his wrongful incarceration is void ab initio for lack of due process, judicial signature, and lawful jurisdiction"; that the continued enforcement of that order violated Plaintiff's constitutional rights under the Fifth, Thirteenth, and Fourteenth Amendments; and that "all garnishments, suspensions, and related enforcement actions taken by DOR-CSE and its agents were ultra vires and unconstitutional." Id. at 28. With regard to injunctive relief, Plaintiff asks that the court enjoin the defendants "from any further enforcement of void or facially invalid child support orders against Plaintiff." Id. Plaintiff seeks both compensatory and punitive damages. Id. at 29.

4

### C. State Court Litigation

The court takes judicial notice of relevant state court documents. See Wiener v. MIB Group, Inc., 86 F.4th 76, 81 n.3 (1st Cir. 2023) ("It is well-accepted that federal courts may take judicial notice of proceedings in other courts if those proceedings have relevance to the matters at hand." (quoting Law Offices of David Efron v. Matthews & Fullmer Law Firm, 782 F.3d 46, 56 n.7 (1st Cir. 2015))); Berrios-Romero v. Estado Libre Asociado de Puerto Rico, 641 F.3d 24, 27 (1st Cir. 2011) ("A decision of a sister court is a proper matter of judicial notice."). All of state court documents to which the court refers are available to the public through the website https://www.masscourts.org.

On November 4, 2008, a Justice of the Massachusetts Probate and Family Court entered a judgment requiring Plaintiff to pay $80 per month for the support of two children and $15,564.00 for child support arrears. See Mass. Dep't of Rev. Child Support Enforcement Div. ex rel Ahart-Upshaw, 08W1291-PA (Middlesex Probate & Family Ct., Mass.). On July 26, 2022, Plaintiff filed a complaint for modification, in which he represented that the parties had "reached a mutual agreement for shared custody and to terminate child support order [and] waive liens." Id. On November 14, 2022, the court denied the motion with prejudice, stating that the court was "unable" to grant Plaintiff's request to "wipe out the child support arrears owed to the Commonwealth." Id. Plaintiff did not appeal the judgment.

### D. Rooker-Feldman Doctrine

The court cannot exercise jurisdiction over Plaintiff's claims as they are currently pled. Had Plaintiff appealed any questions of federal law presented by the Massachusetts Probate and Family Court's judgment to the Massachusetts Supreme Judicial Court, he could have petitioned the Supreme Court of the United States. The Supreme Court would have had jurisdiction to

5

review a final state judgment presenting a question of federal law. See 28 U.S.C. § 1257. The Supreme Court has held that the grant of jurisdiction under § 1257 "is exclusive," meaning that federal judicial review of final state court judgments "may be had *only* in [the Supreme] court." Lance v. Dennis, 546 U.S. 459, 463 (2006) (quoting D.C. Ct. of Appeals v. Feldman, 460 U.S. 462, 482 (1983)). Thus, under the Rooker-Feldman doctrine,[1] a district court does not have jurisdiction over an action brought by a party who lost in state court and who is "seeking review and rejection of that judgment" in a lower federal court. Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 291 (2005); see also Reed v. Goertz, 598 U.S. 230, 235 (2023) (stating that the Rooker-Feldman doctrine "prohibits federal courts from adjudicating cases brought by state-court losing parties challenging state-court judgments").

      Here, Plaintiff explicitly asks this court to review and reject the final judgment of a state court. Under the Rooker-Feldman doctrine, the court lacks jurisdiction to do so. Instead, "the proper forum for challenging an unlawful state court ruling is the United States Supreme Court, on appeal of the highest state court's final judgment." Davison v. Gov't of Puerto Rico-Puerto Rico Firefighters Corps, 471 F.3d 220, 223 (1st Cir. 2006).

      It is conceivable that Plaintiff could present a claim having some connection to the 2008 child support order that the court could adjudicate in his favor without calling the validity of that order into question. The Rooker-Feldman doctrine would not prevent the court from adjudicating such a claim. However, Plaintiff's amended complaint does not clearly present such a claim. All of his claims appear to be based on the premise that the 2008 child support order was unlawful.

---

[1]The term "Rooker-Feldman doctrine" is shorthand reference to the Supreme Court's interpretation of 28 U.S.C. § 1257 in District of Columbia Ct. of Appeals v. Feldman, 460 U.S. 462 (1983) and Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923).

If Plaintiff believes that he can assert a claim that would not be barred by the Rooker-Feldman doctrine, he may file a second amended complaint.

IV.     **Conclusion**

In accordance with the foregoing, the Court hereby orders:

1. The Motion for Leave to Proceed *in Forma Pauperis* [Doc. No. 3] is GRANTED.

2. The Motion to Amend [Doc. No. 2] is GRANTED. The clerk shall docket the proposed amended complaint [Doc. No. 2-5] as the amended complaint.

3. If Plaintiff wishes to proceed with this action, he must, within twenty-eight (28) days file a second amended complaint that is not barred by the Rooker-Feldman doctrine. Failure to do so will result in dismissal of this action.

IT IS SO ORDERED.

                                            /s/ Indira Talwani
                                            United States District Judge

Dated: October 20, 2025